JAMES W. CURRY, Appellant, *v.* JOSEPH CABLISS, ISAAC PHILLIPS, AND JAMES BURNETT, Respondents.

*Practice—Pleading—Elections.*—A petition in a suit against the judges of an election precinct for wrongfully refusing the plaintiff's vote, must set out the facts which give the plaintiff a cause of action, and show how he was entitled to vote, by stating the qualifications which gave him the right.

### Error to Worth Circuit Court.

This case was heard at the September term, 1865, of the Worth Circuit Court, and the demurrer to the following petition sustained :

"Plaintiff by his petition states that the defendants were the judges of the election held on the 6th day of June, 1865, in the county of Worth and State of Missouri, for the purpose of taking a vote on the proposed Constitution of the State of Missouri, adopted by the Convention of said State on the 8th day of April, 1865, and acting as such at the

precinct at the town of Oxford, in Green township, in said county of Worth; that on said day, plaintiff being in all respects a legal voter of said county, and entitled to vote at said election, having fully complied with the law respecting voters previous to offering his vote or ballot, appeared at said precinct and delivered his vote or ballot to the defendants, as such judges of election, which was by them received and deposited in the ballot-box. Plaintiff further states, that afterwards, to-wit, on the said sixth day of June, 1865, the defendants, as such judges as aforesaid, illegally, wilfully, maliciously and corruptly threw out the vote or ballot so given by plaintiff at said election, and refused to count the same with the other votes or ballots given and deposited on said day at said election, but destroyed the same. Wherefore plaintiff states that by reason of the said illegal, corrupt and malicious acts of defendants, as such judges, in depriving plaintiff of his right to have his said vote counted, and in throwing out and destroying the same, he is damaged to the amount of fifteen thousand dollars, and for which he brings his suit."

*Richardson et als.*, for appellant.

I. The court erred in sustaining the demurrer to appellant's petition, for the petition is sufficient and states facts sufficient to constitute a cause of action. (Ashby v. White et als., 1 Smith's Lea. Cas. 290; Broom's Leg. Max. 101–2; Sedg. on Dam. 29–31; Jenkins v. Waldron, 11 Johns. 114; Lincoln v. Hapgood, 11 Mass. 350; Osgood v. Bradley, 7 Greenl. 411; Tozer v. Child, 40 Eng. L. & Eq. 89; 9 Ohio, N. S., 568.)

II. And the defendants are as much liable for throwing out and refusing to count plaintiff's vote, as they would be for refusing to receive the same; for then they, as judges, were acting outside of, and beyond, their authority. (Laws of 1863, p. 17; Kelley v. Bemis, 4 Gray, Mass. 83; People v. Pease, 30 Barb. 588; Sullivan v. Jones, 2 Gray, 570; Craig v. Burnett, 32 Ala. 728.)

*Dixon & Murray*, for respondents.

I. The court below committed no error in sustaining the demurrer, as the petition is manifestly defective on several grounds. The petition contains sweeping averments of conclusions of law, but few statements of fact. If the plaintiff was legally qualified to vote at said precinct, facts in reference to the manner of his qualification ought to be stated, not conclusions of law. (R. C. 1855, p. 1227, § 3; Beech v. Gallup, 2 N. Y. Code, 66; Parker v. Totten, 10 N. Y. Pr. 234; Voorhies' N. Y. Code, 169; Biddle v. Boyce, 13 Mo. 532; Smith et al. v. Dean, 19 Mo. 63; Pye v. Rutter, 7 Mo. 548; Jones v. Brinker, 20 Mo. 87.)

We hold that the petition, in order to make a cause of action against the defendants, ought to aver that plaintiff convinced or satisfied defendants of his right to vote, and aver the fact that he took the oath of loyalty before said judges. Anything short of this is insufficient. Facts must be stated, and not conclusions of law. When plaintiff avers that he was a legal voter, he states a conclusion of law, which is insufficient. (Adams v. Holley, 12 How. 326; Thomas v. Desmond, 12 How. 321; Myers v. Machado, 14 How. 149; Reteltas v. Myers, E. D. Smith, 83; Tallman v. Green, 3 Sand. 438; Stone v. DePuga, 4 Sand. 681.; Garvey v. Fowler, 4 Sand. 665; Boyce v. Brown, 7 Barb. 80; Van Schaick v. Winne, 16 Barb. 95; Murdock v. Chenango Mut. In. Co., 2 Comst. 216; Seney's Ohio Code, 102 & 104; How. N. Y. Code, 192.) This rule of law is too well established in this State, N. York, and other States, to need further comment.

II. Again, as we understand the law, we hold that as soon as the plaintiff's ballot was deposited in the ballot-box it became public property, and that plaintiff had no more control over it than any other citizen of the State. We take it to be a well settled principle of law, that when the whole community are injured by the unlawful acts of others, no one individual among those injured can sustain an action unless he avers and proves special damages, and not always then.

The plaintiff must aver that he proved to the judge his right to vote before he can maintain an action for the rejection of the same in the count; we refer specially to the case of Blanchard v. Stearns, 5 Metc. 298. In that case the court say, that "it must be shown that the plaintiff furnished the defendants with sufficient evidence of being a voter, and requested them to insert his name on the list, before they refused to receive his vote or omitted to insert his name. (1 Hill. Torts, 85.)

The leading case on this subject is Ashby v. White et al., reported in 1 Smith's Lea. Cas. 290. In that case the plaintiff avers that he was a "burgess," and an inhabitant of the borough of Aylesbury, when the election was held; that, being such burgess and inhabitant, he had a right to vote, &c.

Curry, the plaintiff in this case, merely alleges that he was qualified as a voter of Worth county, but not that he was a qualified voter of the precinct at Oxford, in the township of Green. We hold that he ought to allege in his petition the place of his residence; and if a non-resident of Green township, who administered the oaths required by the Constitution, including the oath of loyalty, for such oaths would be legally void if administered by any other person than the judges of said election.

If defendants tampered with the ballot-box and destroyed legal votes, the 38th section of the election law, Stat. 703, provides the punishment, not only of the judges, but of the clerks also, which is a fine of two hundred dollars, to be recovered by civil action, in the name of the county, or by indictment, in either case the fine to go into the county treasury.

HOLMES, Judge, delivered the opinion of the court.

The questions to be considered here are only such as arise upon demurrer to plaintiff's petition. The chief objection was that the petition did not state the facts necessary to be shown in order to constitute the plaintiff a qualified and legal voter, and only conclusions of law. The petition did not

22—VOL. XXXVII.

aver any of the particular facts on which his right to vote depended. It recited only that the plaintiff "being in all respects a legal voter of said county, and entitled to vote at said election, having fully complied with the law respecting voters previous to offering his vote or ballot," appeared before the judges and delivered his vote, which was received and deposited in the ballot-box, and afterwards thrown out.

The constitution, ordinances, and statutes of the State, define the qualifications of voters at this election, and the several provisions on the subject show that facts must exist with regard to any person claiming a right to vote in the State, before he can be entitled to vote at any election. The evidence of these facts must be produced or the facts shown to the judges of the election, in the manner provided by law, and the judges are to be satisfied that the person offering to vote is a legal voter. (Laws of 1863, p. 17, § 4.) The cause of action here is founded on the right to vote, and the action is maintainable where that right has been wilfully, or maliciously, or wrongfully denied by the judges of election, on the ground that wherever there is a right, there is a remedy. But all the facts necessary to constitute that right must be stated in the petition, in order that the court may see, that as a matter of law, the right exists. It cannot be allowed to the party to judge, both for himself and the court, what facts shall be sufficient in law to entitle him to vote at any given election; nor to draw the conclusions of law for himself in his petition.

It is a familiar rule of pleading that the plaintiff must state in his petition all the facts, specifically, which would be necessary, if true, to entitle him to maintain his action, or to have the relief which he seeks. (Biddle v. Boyce, 13 Mo. 532.) And when the right to vote depends upon qualifications prescribed by statute, and it is provided that the judges shall be answerable only in certain specified cases, the plaintiff must state specifically all the facts necessary to bring his case within the statute; he must aver, not only in general terms, that he was a legal voter, but the facts which constitute him such

legal voter. (Blanchard v. Stearns, 5 Metc. 298.) It was also held in this case that the plaintiff must not only allege and prove the facts which made him a legal voter, but also that he furnished the judges of election with sufficient evidence of his having the legal qualifications of a voter, and requested them to receive his vote, before his vote was refused; and he cannot be entitled to recover without showing that he produced, or was ready to give, such evidence of his right as ought to have been received as satisfactory by the judges. In the case of Ashby v. White (2 Ld. Raym. 738), 1 Smith's Lea. Cas. 290, the declaration alleged that the plaintiff was a burgess and an inhabitant of the borough of Aylesbury, and not receiving alms there or elsewhere, but " was duly qualified and entitled to give his vote for the choosing of two burgesses for the borough aforesaid"; and Ch. Justice Holt said that the right of representation in the Commons of England was " exercised in these different qualities, either as knights of shires, citizens of cities, or burgesses of buroughs"; and the right of election belonged to them as freeholders of the counties, and was " incident to, and inseparable from, the freehold." It would, then, appear that when the plaintiff averred that he was a burgess of the burough, not receiving alms, he but stated facts from which it could be seen that he was legally entitled to vote in that borough. In Pryce v. Belcher, 3 C. B. 58; 1 Smith's Lea. Cas., n. 309, the plaintiff was registered as a voter for the burough of Abingdon, but in consequence of becoming a non-resident he had lost his right to vote there, and it was held that he could not maintain an action against the judges of election for refusing to receive his vote. Here the plaintiff makes no averment of the constitutional qualification, that he was a free white male citizen of the United States; nor that he had attained to the age of twenty-one years; nor that he had resided in this State one year before the election, the last three months whereof were in the county or district in which he. offered his vote; nor that he offered a ballot having written thereon the words "New Constitution—*yes*," or the words

"New Constitution—*no*" (Art. XIII., § 3, of the Const.); nor (if he were then absent from his place of residence) that he had offered any evidence to satisfy the judges that he was a qualified voter, or that he offered to be sworn by them that he had not voted in said election at any other election precinct (id. § 5); nor that he had taken, or offered to take, "*the oath of loyalty*," to be administered by the judges of election to every voter, as required by the Constitution (ib. § 6). He merely avers that he had "fully complied with the law respecting voters previous to offering his vote." That averment is a mere conclusion of law drawn by himself, and not a statement of facts from which the court might draw the conclusion, that, as a matter of law, he was a qualified voter, and had a legal right to vote. He does not allege the facts necessary to show that he was a legal voter of the county, but only that he was "in all respects a legal voter of said county;" which again is merely a conclusion of law, and not a statement of facts.

The complaint is, that the judges illegally, wilfully, maliciously, and corruptly threw out his vote after it had been received and deposited in the ballot-box, and refused to count the same with the other votes, and destroyed the same. The facts are not stated in such manner as to enable us to say, whether the transaction amounted to anything more or other than a mere refusal to receive and count his vote. Nor, if it distinctly appeared that the vote had been received, the name of the voter entered in the poll-books, the poll-books signed by the judges, and the ballot-box opened, and the votes counted and strung on a string, and sealed up in a package, and delivered to the clerk of the county court for safe keeping, as required by the statute (Laws of 1863, p. 17), or that any fraud had been practised on the ballot-box at any stage of the proceedings, would it be necessary now to decide in what manner the judges, or the person so offending, would be held responsible, or to whom liable in damages, or otherwise. The gravamen of the complaint here seems to be, the refusal of the judges to receive and count the plain-

tiff's vote; and, for the reasons already stated, we are of the opinion that the petition does not state facts sufficient to constitute a cause of action, and that the demurrer was well taken.

The judgment is affirmed. Judge Wagner concurs; Judge Lovelace absent.